CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAR 16 2016

JULIA C. DUDLEY, CLERK
BY: DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | **Criminal Action No. 7:10CR00016** |
| | ) | |
| **v.** | ) | **MEMORANDUM OPINION** |
| | ) | |
| **SETH LINKOUS THOMAS, Defendant.** | ) | **By: Michael F. Urbanski United States District Judge** |

Seth Linkous Thomas, a federal inmate proceeding pro se, has filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.[1] The government has filed a motion to dismiss, and the time allotted for Thomas to respond has elapsed, making this matter ripe for consideration.[2] After reviewing the record, the court concludes that Thomas has not stated any meritorious claim for relief under § 2255 and that the government's motion to dismiss must be granted.

**I.**

On March 18, 2010, a federal grand jury sitting in Roanoke, Virginia, charged Thomas in a four-count indictment with conspiracy to possess with intent to distribute a measurable quantity of fentanyl resulting in death or serious bodily injury of another, in violation of 21 U.S.C. § 846 ("Count One"); aiding and abetting in the distribution of fentanyl resulting in serious bodily injury of another, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) ("Count Two"); distributing fentanyl resulting in the death of another, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) ("Count Three"); and distributing morphine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) ("Count Four"). On December 9, 2010, Thomas pleaded guilty to Count Four of the indictment

[1] Thomas was sentenced by United States District Judge James C. Turk. Judge Turk is deceased and the motion has been assigned to the undersigned United States District Judge.

[2] Thomas filed a motion for an extension of time to file a response to the government's motion to dismiss, which the court granted by order entered August 5, 2015, giving Thomas until August 26, 2015 to file a response. Thomas did not file a response.

and the court accepted his plea. (ECF Nos. 137, 138.) He proceeded to trial on Counts One, Two, and Three. Thomas challenges his conviction only on Count Three.

Count Three stemmed from a fatal fentanyl overdose by Barry Duncan on November 29, 2007. The prosecution presented evidence at trial that Thomas provided Duncan with a fentanyl patch and helped Duncan apply it to Duncan's back.[3] (Trial Tr. at 39, ECF No. 176.) Later, when the patch did not adhere well, Duncan ingested it. (Trial Tr. at 44, ECF No. 176.) He was found deceased the following morning. (Trial Tr. at 119-20, ECF No. 176.) Dr. Amy Tharp, the assistant chief medical examiner who performed Duncan's autopsy, testified that Duncan died from acute combined fentanyl and methadone poisoning. (Trial Tr. at 129, ECF No. 176.) Dr. Tharp explained that the amount of methadone in Duncan's body was small, and Duncan "had a clearly lethal level of fentanyl all by itself. Regardless of anything else that was in his blood, that was enough to have caused his death." (Id.) She went on to explain that the level of methadone in his body would not have been lethal, without the fentanyl. (Trial Tr. at 130, ECF No. 176.) However, because the two drugs have similar effects on the body, she could not discount methadone as "potentially making the situation worse." (Id.) In addition, Dr. James John Kuhlman, Jr. a forensic toxicologist, testified that the level of fentanyl found in Thomas's system was "clearly fatal." (Trial. Tr. at 19, ECF No. 175.)

The jury was instructed, with regard to Count Two, which involved a non-fatal fentanyl overdose by James Clarke, that it could only find Duncan guilty if the government established that the serious bodily injury "resulted from the use of fentanyl." (Trial Tr. at 15, ECF No. 177.) The court further defined "resulted from" as "the victim would not have suffered the serious bodily injury but for (had it not been for) the fentanyl. In other words, if the fentanyl was not

[3] Defense counsel argued that Duncan could have purchased the patch from someone else who was a known fentanyl patch dealer, as Duncan and Thomas drove somewhere directly before they came back to the apartment where Duncan applied the patch. (Trial Tr. at 14-15, ECF No. 213.)

used by the victim, the victim would not have suffered the serious bodily injury." (Id. at 16.) With regard to Count Three, the jury was instructed that the government must prove beyond a reasonable doubt that "the use of the fentanyl resulted in the death of another," without additional explanation. (Trial Tr. at 16-17, ECF No. 177.)

The jury returned a guilty verdict on all three charges. (ECF No. 157.) On April 4, 2011, the court held a sentencing hearing. (ECF No. 197.) Thomas was sentenced to 300 months' imprisonment. (Judgment at 3, ECF No. 191.) Thomas appealed. (ECF No. 193.)

On July 25, 2012, the Fourth Circuit Court of Appeals reversed Thomas's conviction on Count One (conspiracy to possess with intent to distribute a measurable quantity of fentanyl resulting in death or serious bodily injury of another) and Count Two (aiding and abetting in the distribution of fentanyl resulting in serious bodily injury of another) for lack of evidence. United States v. Thomas, 489 F. App'x 688, 695 (4th Cir. 2012). The Fourth Circuit affirmed Thomas's conviction as to Count Three (distributing fentanyl resulting in the death of another). Id. at 693-94. The Fourth Circuit vacated Thomas's sentence and remanded for resentencing. Id. at 695. Thomas appealed the Fourth Circuit decision, but the Supreme Court denied his petition for a writ of certiorari. Thomas v. United States, 133 S. Ct. 588 (2012).

On September 12, 2012, the court resentenced Thomas to 240 months' imprisonment on Count Three and 120 months' imprisonment on Count Four to run concurrently. (Am. J. at 2, ECF No. 225.) As set forth in Thomas's original presentence report, Thomas's conviction on Count Three for drug distribution resulting in death required a mandatory minimum sentence of 240 months pursuant to 21 U.S.C. § 841(b)(1). (PSR at 16, ECF No. 195.) Thomas did not appeal his resentencing.

On January 28, 2015, Thomas filed the current § 2255 motion. Thomas argues that his motion was timely filed because the Supreme Court, in its recent decision in United States v. Burrage, __ U.S. __, 134 S. Ct. 881 (2014), recognized a new right that applies retroactively to him.

## II.

A viable petition under § 2255 must adhere to strict statute of limitations requirements. A person convicted of a federal offense must file a § 2255 motion within one year of the latest date on which:

> (1) the judgment of conviction becomes final;
>
> (2) the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f). If a defendant does not appeal, his judgment of conviction becomes final when the time period to appeal or seek review has concluded. Clay v. United States, 537 U.S. 522, 524-25 (2003).

An amended judgment was entered against Thomas on September 14, 2012. (ECF No. 225.) Because he did not appeal the judgment, his conviction became final on September 28, 2012, fourteen days after his amended judgment was entered. See Fed. R. App. P. 4(b)(1)(A). He then had one year, until September 28, 2013, in which to file a timely § 2255 motion.

Because Thomas filed his § 2255 motion on January 28, 2015, his claims are untimely under § 2255(f)(1).

Nonetheless, Thomas argues that rather than use the date of his amended judgment of conviction as the trigger for calculating the timeliness of his § 2255 motion, the court should use the date of the Supreme Court's recent decision in Burrage instead. Burrage was decided on January 27, 2014, and Thomas's § 2255 motion was filed within a year of that decision.[4]

Pursuant to § 2255(f)(3), Thomas can rely on Burrage's triggering date only if the Supreme Court announced a new rule of constitutional law that applies retroactively. The Supreme Court did not specify whether Burrage has retroactive effect and many courts, including this one, have refused to so find. See, e.g., Steward v. United States, 89 F. Supp. 3d 993, 996 (E.D. Wis. 2015) (collecting cases); United States v. Grady, No. 5:10CR0002, 2015 WL 4773236, at *4, 2015 U.S. Dist. LEXIS 106374, at *9-10 (W.D. Va. Aug. 12, 2015). Nonetheless, the issue is not settled and the Eighth Circuit recently granted a defendant's certificate of appealability because the government in that case conceded that "Burrage applies retroactively." Ragland v. United States, 784 F.3d 1213, 1214 (8th Cir. 2015).

This court need not resolve the question of whether Burrage applies retroactively, however, because Thomas's trial comports with the more stringent burden-of-proof standard enunciated in Burrage. In Burrage, the Court interpreted 21 U.S.C. § 841(a)(1) and (b)(1)(C), the statute under which Thomas was found guilty in Count Three, to impose a new and stricter burden of proof on the government to establish that "death or serious bodily injury result[ed]" from drug distribution. 134 S.Ct. at 891.

---

[4] Thomas's motion was filed on January 28, 2015. That is a year and a day after Burrage was decided. However, the "prison mailbox rule," which establishes that a petition is deemed filed upon delivery to prison mailroom officials, applies. Houston v. Lack, 487 U.S. 266, 270-72 (1988). The envelope in which Thomas's petition was mailed to the court was date-stamped January 26, 2015. Accordingly, his petition will be construed as having been filed within a year of the Burrage decision.

A defendant who is convicted of distribution under § 841(b)(1)(C) faces a prison term of not more than twenty years. 21 U.S.C. § 841(b)(1)(C). However, when "death or serious bodily injury results from the use of the [distributed] substance," the defendant faces a mandatory minimum sentence of 20 years. Id. Under Burrage, it is not enough for the government to show that a drug that a defendant distributed contributed to the victim's death or injury. 134 S. Ct. at 891. Instead, the government must meet a but-for causation test, which requires it to prove that the distributed drug was independently sufficient to cause the victim's death. Id. at 892. In other words, the government must show that but for the distributed drug, the overdose victim would not have died or suffered serious bodily harm. Id. Without such a finding, a defendant cannot be subject to the twenty-year mandatory minimum sentence provided for under the penalty enhancement provision of 21 U.S.C. § 841(b)(1)(C). Id. at 892. The determination that "death results" increases the statutory minimum and maximum sentences that a defendant faces and thus is an element of the offense that must be submitted to the jury and found beyond a reasonable doubt. Id. at 887.

Thomas asserts that under Burrage, the fentanyl patch that he was convicted of distributing was not an independently sufficient cause of death because Duncan died from "acute combined fentanyl and methadone poisoning." (Trial Tr. at 129, ECF No. 176 (emphasis added).) However, Thomas presents no evidence that the fentanyl merely contributed rather than caused Duncan's death. See United States v. Alvarado, No. 14-4338, 2016 WL 860328, at *5 (4th Cir. Mar. 7, 2016) (noting when there is "no evidence in th[e] case that would allow a jury to find that heroin was only a nonessential contributing cause of [the victim's] death" the defendant cannot establish error under Burrage). Every medical professional who testified at trial concluded that the level of fentanyl found in Duncan's body was fatal. The assistant chief

medical examiner testified both on direct and cross examination that Duncan would have died from the fentanyl even without the methadone. Moreover, she described the level of methadone as "just enough . . . for them to tell that it was there, but not actually enough for them to measure it." (Trial Tr. at 130, ECF No. 176.) She said that she included the methadone as a contributing factor because it has a similar effect to fentanyl and so might have "potentially ma[de] the situation worse." (Id.) Nonetheless, she stated unequivocally and "beyond a reasonable doubt" that the fentanyl without the methadone would have caused Duncan to die. (Id. at 137.) A forensic toxicologist also testified at trial that the amount of fentanyl in Duncan's system was "clearly fatal" as death often results from levels less than half as high as those found in Duncan. (Trial Tr. at 19, ECF 175.)

Finally, the jury was properly instructed that it must find that the use of fentanyl "resulted in" Duncan's death.[5] When the court defined "resulted in," in Count Two, it explained that the government must show that "but for (had it not been for) the fentanyl" the victim would not have suffered serious bodily injury. (Trial Tr. at 16, ECF No. 177 (emphasis added).) The court went on to elucidate: "In other words, if the fentanyl was not used by the victim, the victim would not have suffered the serious bodily injury." (Id.) For Count Three, the court did not further define "resulted in" other than instructing the jury that it must find that "the use of the fentanyl resulted in the death of another." As the Supreme Court made clear in Burrage, the "ordinary meaning"

[5] The jury was provided with a verdict form that asked it to check one of three possible outcomes with regard to Count Three:

> Guilty of knowingly and intentionally distributing, or aiding and abetting in the distribution of a measurable quantity of Fentanyl, a Schedule II controlled substance, which resulted in the death of another.
>
> Not Guilty as charged in the Indictment, but Guilty of knowingly and intentionally distributing, or aiding and abetting in the distribution of a measurable quantity of Fentanyl, a Schedule II controlled substance.
>
> Not Guilty.

(Verdict Form, ECF No. 157). The jury checked the the first option.

of "results from" is that the outcome or harm would not have occurred were it not for the defendant's conduct. Burrage, 134 S.Ct. at 887-88; see also Alvarado, 2005 WL 860328, * 5, (concluding that the district court did not err by allowing the jury to rely on its own understanding of the term "results from," without providing additional instruction). The jury could have relied on its general understanding of the phrase "results from," or the explanation previously provided by the court in Count Two. See Noel v. Artson, 641 F.3d 580, 586 (4th Cir. 2011) (noting that a court must look at "whether the instructions construed as a whole, and in light of the whole record, adequately informed the jury of the controlling legal principles without misleading or confusing the jury . . . ." (internal quotation omitted)). The fact that the detailed definition was provided only as to Count Two does not affect the validity of the jury instructions provided in Count Three because it is important not to "overlook[] the fact that the charge in its totality was what the jury heard." Id. The instructions, construed as a whole, adequately informed the jury that in order to find Thomas guilty of Count Three, it needed to find that but for the use of fentanyl, Duncan would not have died.

Moreover, the facts in Burrage were very different from this case. In Burrage, the victim died after "an extended drug binge." Burrage, 134 S. Ct. at 885. At the time of his death, heroin metabolites, codeine, alprazolam, clonazepam metabolites, and oxycodone all were found in the victim's system. Id. The defendant sold the victim the heroin, was convicted under 21 U.S.C. § 841(a)(1), and sentenced under the mandatory minimum provision when death "results from" the use of the distributed drug. Id. Because of the number of drugs in the victim's system, "[n]o expert was prepared to say that [the victim] would have died from the heroin use alone." Id. at 890. Indeed, in Burrage, the court instructed the jury, in conformity with the evidence, that the

heroin distributed by the defendant merely needed to act as "a contributing cause of [the vicitim's] death." Id. at 886 (emphasis added).

In Thomas's case, however, the circumstances were markedly different. Because the level of fentanyl in Duncan's system was so high and the level of methadone so low, every expert testified that the level of fentanyl alone was fatal. Moreover, the jury instructions never suggested that the use of fentanyl need only have contributed to Duncan's death. Instead, they made clear that the fentanyl must have been the but-for cause of Duncan's death. Therefore, the evidence supports Thomas's conviction under the but-for causation test mandated by Burrage.

Thomas raises two additional claims for relief. First, he argues that the court erroneously instructed the jury regarding aiding and abetting in Count Three because it did not explain that Thomas could not be found guilty if he did not give Duncan the fentanyl patch, but merely helped him apply it to his body. (Mot. at 8, ECF 231.) Second, he argues that there was no evidence presented that he, rather than a known fentanyl-patch dealer, distributed the fentanyl patch to Duncan. (Mot. at 16, ECF 231.) These claims are unrelated to the Supreme Court's decision in Burrage. Because Congress has evinced a clear intent to cabin the time for filing post-conviction remedies pursuant to 28 U.S.C. § 2255, each claim raised in a habeas petition must satisfy the one-year time limit. Bachman v. Bagley, 487 F.3d 979, 984 (6th Cir. 2007); Fielder v. Varner, 379 F.3d 113, 117-18 (3d Cir. 2004). These additional claims do not fall under the § 2255(f)(3) savings clause, and accordingly are untimely.[6]

[6] Even assuming, arguendo, that Thomas's Burrage claim is timely under § 2255(f)(3) and that one timely claim allows this court to hear all claims in the petition, see Walker v. Crosby, 341 F.3d 1240, 1245 (11th Cir. 2003), his additional arguments lack merit. To state a viable claim for relief under § 2255, a defendant must prove: (1) that his sentence was "imposed in violation of the Constitution or laws of the United States;" (2) that "the court was without jurisdiction to impose such a sentence;" or (3) that "the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255. Thomas cannot do so. His counsel objected to the aiding and abetting jury instruction at trial, and Thomas appealed the issue to the Fourth Circuit. The Fourth Circuit concluded that the jury instructions, as a whole, properly instructed the jury as to the requirements for aiding and abetting. United States v. Thomas, 489 F. App'x. 688, 692-93 (4th Cir. 2012). Thomas

## III.

For the reasons stated herein, the court will grant the government's motion to dismiss. An appropriate order will be entered this day. Because Thomas has failed to make a substantial showing of the denial of a constitutional right as required by 28 U.S.C. § 2253(c), a certificate of appealability will be denied.

**ENTER:** This 16th day of March, 2016.

/s/ Michael F. Urbanski

United States District Judge

raises no new evidence with regard to this claim. Once an issue has been fully considered and decided by the court of appeals, the defendant cannot relitigate the issue before this court under § 2255. Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir. 1976). Accordingly, it must fail.

Thomas's other claim that the government presented no evidence that he distributed the fentanyl patch to Duncan also fails. His defense theory at trial was that Duncan bought the fentanyl patch from someone else who was a known fentanyl dealer. (Trial Tr. at 14-15, ECF No. 213). The jury credited the government's evidence over Thomas's, however, and found him guilty of Count Three. (Verdict at 2, ECF No. 157). Thomas has presented no evidence that this factual determination considered and rejected by the jury, was imposed in violation of the Constitution or federal laws, that this court was without jurisdiction to impose his sentence, or that his sentence was in excess of the maximum allowed by law. 28 U.S.C. § 2255. Accordingly, it lacks merit and must be dismissed.